1  **GREGORY MURPHY**
California State Bar No. 245505
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
3  San Diego, California 92101-5030
Telephone: (619) 234-8467
4  gregory_murphy@fd.org

5  Attorneys for Mr. Mark Anthony Gallegos

6

7

8               UNITED STATES DISTRICT COURT

9               SOUTHERN DISTRICT OF CALIFORNIA

10              **(HONORABLE THOMAS J. WHELAN)**

11

12 UNITED STATES OF AMERICA,        )   **CASE NO. 08CR1552-W**
                                    )
13        Plaintiff,                )   DATE: June 30, 2008
                                    )   TIME: 2:00 p.m.
14                                  )
                                    )   **NOTICE OF MOTIONS AND**
15 v.                               )   **MOTIONS:**
                                    )
16 MARK ANTHONY GALLEGOS,           )   **(1)  TO SUPPRESS IDENTIFICATION;**
                                    )   **(2)  TO COMPEL DISCOVERY; AND**
17        Defendant.                )   **(3)  FOR LEAVE TO FILE**
                                    )        **FURTHER MOTIONS**
18                                  )
                                    )
19 

20 TO:   KAREN P. HEWITT, UNITED STATES ATTORNEY; AND
       DAVID LESHNER, ASSISTANT UNITED STATES ATTORNEY:

21       PLEASE TAKE NOTICE that on June 30, 2008, at 2:00 p.m., or as soon thereafter as

22 counsel may be heard, the defendant, Mark Anthony Gallegos, by and through his counsel, Gregory

23 T. Murphy and Federal Defenders of San Diego, Inc., will ask this Court to enter an order granting

24 the following motions.

25 //

26 //

27 //

28 //

# MOTIONS

The defendant, Mark Anthony Gallegos, by and through his attorneys, Gregory Murphy and Federal Defenders of San Diego, Inc., pursuant to the United States Constitution, the Federal Rules of Criminal Procedure, and all other applicable statutes, case law and local rules, hereby moves this Court for an order:

1) Suppressing Identification;

2) Compelling discovery; and

3) for leave to file further motions.

These motions are based upon the instant motions and notice of motions, the attached statement of facts and memorandum of points and authorities, and all other materials that may come to this Court's attention at the time of the hearing on these motions.

Respectfully submitted,

Dated: June 16, 2008

/s/ *Gregory Murphy*
**GREGORY MURPHY**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Mark Anthony Gallegos
gregory_murphy@fd.org

**GREGORY MURPHY**
California State Bar No. 245505
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
gregory_murphy@fd.org

Attorneys for Mr. Gallegos

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(**HONORABLE THOMAS J. WHELAN**)

| | |
|---|---|
| UNITED STATES OF AMERICA, | **CASE NO. 08CR1552-W** |
| Plaintiff, | |
| v. | **STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTIONS** |
| **MARK ANTHONY GALLEGOS** | |
| Defendant | |

**I.**

**STATEMENT OF FACTS**

**A.    The Charge**

The government alleges that Mark Anthony Gallegos violated 8 U.S.C. § 1324 by (1) using his grandfather's shed to harbor an undocumented immigrant named Ismael Ayon and (2) aiding and abetting others in bringing Mr. Ayon to the United States. Mr. Gallegos has pleaded not guilty to both charges.

//
//
//
//

**B.     The Identification**

After arresting Mr. Gallegos and Mr. Ayon, ICE agents brought both men to the same facility for processing. Mr. Gallegos and Mr. Ayon were clearly visible to each other while they were being processed. Indeed, they briefly shared the same cell.

The agents interviewed Mr. Ayon at least once before video-recording his statement. During that earlier interview, they showed Mr. Ayon a photo of Mr. Gallegos. See Exhibit A, Transcript of Videotaped Interview at 4:11-12 (Q: "Who opened the door?" A: "The dude of the photo you showed me."). Then, after eliciting this identification, the agents video-recorded another interview of Mr. Ayon. This time, they showed Mr. Ayon a "six pack" of photos. See Exhibit A, pp. 5:21-6:20. Unsurprisingly, Mr. Ayon selected from that six-pack the photo of Mr. Gallegos he had seen earlier.

## II.

## MOTION TO SUPPRESS IDENTIFICATION

**A.     The Pretrial Identification Was Unnecessarily Suggestive**

Pretrial identification procedures must be fairly conducted to avoid the likelihood of misidentification caused by unnecessarily suggestive methods. Simmons v. United States, 390 U.S. 377, 384 (1968); Stovall v. Denno, 388 U.S. 293, 302 (1967); United States v. Sanders, 479 F.2d 1193, 1198 (D.C. Cir. 1973). In determining the admissibility of a pretrial identification, the Court must consider the "totality of the circumstances" to determine whether an unnecessarily suggestive identification procedure gives rise to a substantial likelihood of misidentification. Neil v. Biggers, 409 U.S. 188, 199 (1972); Simmons, 390 U.S. at 382.

In making this determination, the Court should consider the size of the array, the manner of presentation by the officers, and the contents of the array. United States v. Thai, 29 F.3d 785, 808 (2d Cir. 1994). Additionally, the actions and remarks of the government agents involved in the procedures may cause an otherwise fair pretrial identification procedure to be impermissibly suggestive. See United States v. Field, 625 F.2d 862, 865 (9th Cir. 1980); United States v. Jarvis, 560 F.2d 494, 500 (2d Cir. 1977).

//

1    Single-photo identification procedures have long been recognized as inherently suggestive. See Stovall, 388 U.S. at 302 ("The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned."); Mysholowsky v. People of New York, 535 F.2d 194, 197 (2d Cir. 1976) ("We have consistently condemned the exhibition of a single photograph as a suggestive practice, and, where no extenuating circumstances justify the procedure, as an unnecessarily suggestive one."); Hudson v. Blackburn, 601 F.2d 785, 788 (5th Cir. 1979) (recognizing that "single photograph display is one of the most suggestive methods of identification and is always to be viewed with suspicion").  Courts have approved of such inherently suggestive identification procedures only where the procedure is necessitated by some exigent circumstances. Compare Stovall, 388 U.S. at 301-02 (holding one person show-up in hospital room of critically wounded victim did not violate due process where record revealed procedure was "imperative"), with Manson v. Brathwaite, 432 U.S. 98, 108-109 (1977) (accepting government's concession that procedure was unnecessarily suggestive where "[t]here was no emergency and little urgency"), and United States v. Montgomery, 150 F.3d 983, 992-93 (9th Cir. 1998) (finding single photograph procedure unnecessarily suggestive where government failed to establish need for it).

   There was no urgency here.  Mr. Ayon was in custody and subject to detention pending prosecution for illegal entry. Thus, "[n]o urgent need for immediate action prevented (the investigating officer) from taking the small trouble to bring several similar photos with him." United States v. Fowler, 439 F.2d 133, 134 (9th Cir. 1971) (internal quotations omitted).

   Moreover, the uncontradicted evidence before the Court establishes that the identification procedures were unduly suggestive.  By displaying Mr. Gallegos to Mr. Ayon throughout his booking, then placing them in the same cell, the agents unfairly and unnecessarily focused attention on Mr. Gallegos as the agents' chosen suspect. Worse, the agents employed a single-photograph procedure when there was no exigency justifying the use of such an inherently suggestive technique, then videotaped themselves using a multiple photo lineup.  The Court should not sanction such deceptive conduct.

//
//

3

**B.     Mr. Ayon's Identification Was Not Otherwise Reliable**

Identifications made under unduly suggestive circumstances are inadmissible unless the government is able to show that the identification was nonetheless reliable. See United States v. Gregory, 891 F.2d 732, 734 (9th Cir. 1989). To determine the corrupting effect of the faulty identification procedure herein, this Court must determine (1) the reliability of the pretrial identification and (2) the reliability of any in-court identification.

The Supreme Court set forth five factors to help evaluate the reliability of an out-of-court identification procedure: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. Biggers, 409 U.S. at 199-200.

These factors militate against a finding of reliability of the identifications in this case. First, Mr. Ayon's interactions with Mr. Gallegos lasted less than a minute at most.  Second, Mr. Ayon indicates he was hurrying to conceal himself, and therefore not necessarily interested in the identity of the person from whom he was allegedly receiving instructions. Discovery suggests Mr. Ayon had never seen Mr. Gallegos before.  Accordingly, the second factor also weighs against admitting the identification. Third, there is no indication that Mr. Ayon provided any description of Mr. Gallegos during the interviews that preceded the recording.  Fourth, any confidence Mr. Ayon displayed in his choice of photos from the six-pack resulted from the suggestiveness of the procedure itself. See Raheem v. Kelly, 257 F.3d 122, 139 (2d Cir. 2001)(finding certainty engendered by suggestiveness). Fifth and finally, under these profoundly suggestive circumstances, the length of time between the alleged offense and the identification is simply irrelevant.

"Suggestive pretrial photographic identification procedures may taint in-court identifications sufficient to deny the accused due process of law." Field, 625 F.2d at 865. Before allowing an in-court identification following an impermissibly suggestive out-of-court procedure, this Court must determine whether the witness had an independent source to support the in-court identification. United States v. Wade, 388 U.S. 218, 240 (1967). It appears that no such independent source exists herein. If the government is unable to prove the existence of any reliable independent source

4

necessary to support an in-court identification of Mr. Gallegos, the government should be precluded from seeking the testimony of Mr. Ayon as to whether he recognizes Mr. Gallegos.

### III.

### MOTION COMPEL DISCOVERY

Mr. Gallegos requests the following discovery. His request is not limited to those items of which the prosecutor is aware. It includes all discovery listed below that is in the custody, control, care, or knowledge of any "closely related investigative [or other] agencies." See United States v. Bryan, 868 F.2d 1032 (9th Cir. 1989).

1.  The Defendant's Statements. The government must disclose to Mr. Gallegos *all* copies of any written or recorded statements made by Mr. Gallegos; the substance of any statements made by Mr. Gallegos that the government intends to offer in evidence at trial; any response by Mr. Gallegos to interrogation; the substance of any oral statements that the government intends to introduce at trial and any written summaries of Mr. Gallegos's oral statements contained in the handwritten notes of the government agent; any response to any Miranda warnings that may have been given to Mr. Gallegos; and any other statements by Mr. Gallegos. Fed. R. Crim. P. 16(a)(1)(A) and (B). The Advisory Committee Notes and the 1991 amendments to Rule 16 make clear that the government must reveal *all* Mr. Gallegos's statements, whether oral or written, regardless of whether the government intends to make any use of those statements.

2.  Arrest Reports, Notes and Dispatch Tapes. Mr. Gallegos also specifically requests that all arrest reports, notes and dispatch or any other tapes that relate to the circumstances surrounding his arrest or any questioning, if such reports have not already been produced *in their entirety*, be turned over to him. This request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in which statements of Mr. Gallegos or any other discoverable material is contained. Mr. Gallegos includes in this request any redacted portions of the Report of Investigation ("ROI") and any subsequent ROIs that the case agent or any other agent has written. This is all discoverable under Fed. R. Crim. P. 16(a)(1)(A) and (B) and Brady v. Maryland, 373 U.S. 83 (1963). See also Loux v. United States, 389 F.2d 911 (9th Cir. 1968). Arrest reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and

prosecution reports pertaining to Mr. Gallegos are available under Fed. R. Crim. P. 16(a)(1)(A) and (B), Fed. R. Crim. P. 26.2 and 12(I). Preservation of rough notes is requested, whether or not the government deems them discoverable.

   3. <u>Brady Material</u>. Mr. Gallegos requests all documents, statements, agents' reports, and tangible evidence favorable to him on the issue of guilt and/or that affects the credibility of the government's case. Impeachment and exculpatory evidence both fall within <u>Brady's</u> definition of evidence favorable to the accused. <u>United States v. Bagley</u>, 473 U.S. 667 (1985); <u>United States v. Agurs</u>, 427 U.S. 97 (1976).

   4. <u>Any Information That May Result in a Lower Sentence</u>. As discussed above, any information that may result in a more favorable sentence must also be disclosed pursuant to <u>Brady</u>, 373 U.S. 83. The government must disclose any cooperation or attempted cooperation by Mr. Gallegos, as well as any information that could affect any base offense level or specific offense characteristic under Chapter Two of the United States Sentencing Commission Guidelines Manual ("Guidelines"). Also included in this request is any information relevant to a Chapter Three adjustment, a determination of Mr. Gallegos's criminal history, or any other application of the Guidelines.

   5. <u>The Defendant's Prior Record</u>. Evidence of a prior record is available under Fed. R. Crim. P. 16(a)(1)(D). Mr. Gallegos specifically requests a complete copy of any criminal record.

   6. <u>Any Proposed 404(b) Evidence</u>. Evidence of prior similar acts is discoverable under Fed. R. Crim. P. 16(a)(1)(D) and Fed. R. Evid. 404(b) and 609. In addition, under Fed. R. Evid. 404(b), "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature . . . ." of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial. Sufficient notice requires the government to "articulate *precisely* the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." <u>United States v. Mehrmanesh</u>, 689 F.2d 822, 830 (9th Cir. 1982) (emphasis added; internal citations omitted); <u>see also</u> <u>United States v. Brooke</u>, 4 F.3d 1480, 1483 (9th Cir. 1993) (reaffirming <u>Mehrmanesh</u> and reversing convictions).

//

This includes any "TECS" records (records of prior border crossings) that the government intends to introduce at trial, whether in its case-in-chief, impeachment, or rebuttal. Although there is nothing intrinsically improper about prior border crossings, they are nonetheless subject to 404(b), as they are "other acts" evidence that the government must produce before trial. United States v. Vega, 188 F.3d 1150, 1154-1155 (9th Cir. 1999). Mr. Gallegos requests that such notice be given three weeks before trial to give the defense time to adequately investigate and prepare for trial.

7. <u>Evidence Seized</u>. Evidence seized as a result of any search, either warrantless or with a warrant, is discoverable under Fed. R. Crim. P. 16(a)(1)(E).

8. <u>Request for Preservation of Evidence</u>. The defense specifically requests that all dispatch tapes or any other physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government and that relate to the arrest or the events leading to the arrest in this case be preserved. This request includes, but is not limited to, Mr. Gallegos's personal effects and any evidence seized from Mr. Gallegos or any third party. This request also includes any material or percipient witnesses who might be deported or otherwise likely to become unavailable (e.g. undocumented aliens and transients). Mr. Gallegos requests that the prosecutor be ordered to question all the agencies and individuals involved in the prosecution and investigation of this case to determine if such evidence exists, and if it does exist, to inform those parties to preserve any such evidence.

9. <u>Henthorn Material</u>. Mr. Gallegos requests that the Assistant United States Attorney ("AUSA") assigned to this case oversee (not personally conduct) a review of all personnel files of each agent involved in the present case for impeachment material. See <u>Kyles v. Whitley</u>, 514 U.S. 437, 438 (1995) (holding that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police"); <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991). This request includes, but is not limited to, any complaints filed (by a member of the public, by another agent, or any other person) against the agent, whether or not the investigating authority has taken any action, as well as any matter for which a disciplinary review was undertaken, whether or not any disciplinary action was ultimately recommended. Mr. Gallegos further requests production of any such information at least one week

prior to the motion hearing and two weeks prior to trial. If the prosecutor is uncertain whether certain information should be disclosed pursuant to this request, this information should be produced to the Court in advance of the motion hearing and the trial for an in camera inspection.

      10.    <u>Tangible Objects</u>. Mr. Gallegos requests the opportunity to inspect, copy, and test, as necessary, all other documents and tangible objects, including photographs, books, papers, documents, alleged narcotics, fingerprint analyses, vehicles, or copies of portions thereof, that are material to the defense or intended for use in the government's case-in-chief or were obtained from or belong to Mr. Gallegos. Fed. R. Crim. P. 16(a)(1)(E). Specifically, Mr. Gallegos requests color copies of all photographs in the government's possession of the alleged narcotics and the vehicle in which the narcotics were found.

      11.    <u>Expert Witnesses</u>. Mr. Gallegos requests the name, qualifications, and a written summary of the testimony of any person that the government intends to call as an expert witness during its case in chief. Fed. R. Crim. P. 16(a)(1)(G). This summary should include a description of the witness' opinion(s), as well as the bases and the reasons for the opinion(s). See <u>United States v. Duvall</u>, 272 F.3d 825 (7th Cir. 2001) (finding that government's written expert notice did not adequately summarize or describe police detective's testimony in drug prosecution where notice provided only a list of the general subject matters to be covered and failed to identify what opinion the expert would offer on those subjects). This request includes, but is not limited to, disclosure of the qualifications of any government witness who will testify that he understands and/or speaks Spanish or any other foreign language that may have been used during the course of an interview with Ms. Gallegos or any other witness. Mr. Gallegos requests the notice of expert testimony be provided at a minimum of three weeks prior to trial so that the defense can properly prepare to address and respond to this testimony, including obtaining its own expert and/or investigating the opinions, credentials of the government's expert and obtain a hearing in advance of trial to determine the admissibility of qualifications of any expert. See <u>Kumho v. Carmichael Tire Co.</u>, 526 U.S. 137, 119 S.Ct. 1167, 1176 (1999) (trial judge is "gatekeeper" and must determine, reliability and relevancy of expert testimony and such determinations may require "special briefing or other proceedings")

8

      12.    <u>Impeachment evidence</u>.  Mr. Gallegos requests any evidence that any prospective government witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has made a statement favorable to Mr. Gallegos.  See Fed. R. Evid. 608, 609 and 613.  Such evidence is discoverable under <u>Brady</u>, 373 U.S. 83.  See <u>United States v. Strifler</u>, 851 F.2d 1197 (9th Cir. 1988) (witness' prior record); <u>Thomas v. United States</u>, 343 F.2d 49 (9th Cir. 1965) (evidence that detracts from a witness' credibility).

      13.    <u>Evidence of Criminal Investigation of Any Government Witness</u>.  Mr. Gallegos requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct.  <u>United States v. Chitty</u>, 760 F.2d 425 (2d Cir. 1985).

      14.    <u>Evidence of Bias or Motive to Lie</u>.  Mr. Gallegos requests evidence that any prospective government witness is biased or prejudiced against Mr. Gallegos, or has a motive to falsify or distort his or her testimony.  <u>Pennsylvania v. Ritchie</u>, 480 U.S. 39 (1987); <u>Strifler</u>, 851 F.2d 1197.

      15.    <u>Evidence Affecting Perception, Recollection, Ability to Communicate, or Veracity</u>.  Ms. Flores requests any evidence, including any medical or psychiatric report or evaluation, tending to show that any prospective witness's ability to perceive, remember, communicate, or tell the truth is impaired; and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic.  <u>Strifler</u>, 851 F.2d 1197; <u>Chavis v. North Carolina</u>, 637 F.2d 213, 224 (4th Cir. 1980).

      16.    <u>Witness Addresses</u>.  Mr. Gallegos requests the name and last known address of each prospective government witness.  See <u>United States v. Napue</u>, 834 F.2d 1311 (7th Cir. 1987); <u>United States v. Tucker</u>, 716 F.2d 576 (9th Cir. 1983) (failure to interview government witnesses by counsel is ineffective); <u>United States v. Cook</u>, 608 F.2d 1175, 1181 (9th Cir. 1979) (defense has equal right to talk to witnesses).  Mr. Gallegos also requests the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will *not* be called as a government witness.  <u>United States v. Cadet</u>, 727 F.2d 1453 (9th Cir. 1984).

      17.    <u>Names of Witnesses Favorable to the Defendant</u>.  Mr. Gallegos requests the name of any witness who made any arguably favorable statement concerning Mr. Gallegos or who could not

identify him or who was unsure of his identity or participation in the crime charged. Jackson v. Wainwright, 390 F.2d 288 (5th Cir. 1968); Chavis, 637 F.2d at 223; Jones v. Jago, 575 F.2d 1164, 1168 (6th Cir. 1978); Hudson v. Blackburn, 601 F.2d 785 (5th Cir. 1979), cert. denied, 444 U.S. 1086 (1980).

18. **Statements Relevant to the Defense**. Mr. Gallegos requests disclosure of any statement that may be "relevant to any possible defense or contention" that he might assert. United States v. Bailleaux, 685 F.2d 1105 (9th Cir. 1982). This includes grand jury transcripts that are relevant to the defense motion to dismiss the indictment.

19. **Jencks Act Material**. Mr. Gallegos requests production in advance of the motion hearing or trial of all material, including dispatch tapes, that the government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500 and Fed. R. Crim. P. 26.2. A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under section 3500(e)(1). Campbell v. United States, 373 U.S. 487, 490-92 (1963); see also United States v. Boshell, 952 F.2d 1101 (9th Cir. 1991) (holding that interview notes constitutes Jencks material when an agent reviews notes with the subject of the interview); see also United States v. Riley, 189 F.3d 802, 806-808 (9th Cir. 1999). Advance production will avoid the possibility of delay of the motion hearing or trial to allow Mr. Gallegos to investigate the Jencks material. Mr. Gallegos requests pre-trial disclosure of such statements to avoid unnecessary recesses and delays and to allow defense counsel to prepare for, and use properly any Jencks statements during cross-examination. Moreover, production of the rough notes is particularly important in light of the interviews of Mr. Ayon that preceded the video-recording.

20. **Giglio Information**. Pursuant to Giglio v. United States, 405 U.S. 150 (1972), Mr. Gallegos requests all statements and/or promises, expressed or implied, made to any government witnesses, in exchange for their testimony in this case, and all other information that could arguably be used for the impeachment of any government witnesses. In particular, Mr. Gallegos requests all conversations between agents and Mr. Ayon regarding the possibility that he would be prosecuted.

21. **Agreements Between the Government and Witnesses**. Mr. Gallegos requests discovery regarding any express or implicit promise, understanding, offer of immunity, of past,

present, or future compensation, or any other kind of agreement or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability, between any prospective government witness and the government (federal, state and/or local).  This request also includes any discussion with a potential witness about or advice concerning any immigration benefits, any contemplated prosecution, or any possible plea bargain, even if no bargain was made or the advice not followed.

22. <u>Informants and Cooperating Witnesses</u>.  Mr. Gallegos requests disclosure of the names and addresses of all informants or cooperating witnesses used or to be used in this case, and in particular, disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime charged against Mr. Gallegos.  The government must disclose the informant's identity and location, as well as disclose the existence of any other percipient witness unknown or unknowable to the defense.  <u>Roviaro v. United States</u>, 353 U.S. 52, 61-62 (1957).  The government must disclose any information derived from informants that exculpates or tends to exculpate Mr. Gallegos.

23. <u>Bias by Informants or Cooperating Witnesses</u>.  Mr. Gallegos requests disclosure of any information indicating bias on the part of any informant or cooperating witness.  <u>Giglio</u>, 405 U.S.

24. Such information would include what, if any, inducements, favors, payments or threats were made to the witness to secure cooperation with the authorities.  Again, any suggestion that Mr. Ayon was subject to prosecution must be produced under <u>Giglio</u>.

25. <u>Personnel Records of Government Officers Involved in the Arrest</u>.  Mr. Gallegos requests all citizen complaints and other related internal affairs documents involving any of the immigration officers or other law enforcement officers who were involved in the investigation, arrest and interrogation of Mr. Gallegos.  See <u>Pitchess v. Superior Court</u>, 11 Cal. 3d 531, 539 (1974).  Because of the sensitive nature of these documents, defense counsel will be unable to procure them from any other source.

26. <u>Performance Goals and Policy Awards</u>.  Mr. Gallegos requests disclosure of information regarding standards used for measuring, compensating or reprimanding the conduct of

all law enforcement officers involved in the case (Customs, Border Patrol, INS, etc.) to the extent such information relates to the detection of contraband. This request specifically includes information concerning performance goals, policy awards, and the standards used by Customs for commending, demoting, or promoting agents for their performance detecting alien smuggling.

27. <u>Reports of Scientific Tests or Examinations</u>. Pursuant to Fed. R. Crim. P. 16(a)(1)(F), Mr. Gallegos requests the reports of all tests and examinations conducted upon the evidence in this case, including, but not limited to, any fingerprint testing done upon any evidence seized in this case, that is within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government, and that are material to the preparation of the defense or are intended for use by the government as evidence in chief at the trial.

28. <u>Brady Information</u>. The defendant requests all documents, statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the government's case. Under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), impeachment as well as exculpatory evidence falls within the definition of evidence favorable to the accused. <u>United States v. Bagley</u>, 473 U.S. 667 (1985); <u>United States v. Agurs</u>, 427 U.S. 97 (1976).

29. <u>Any Proposed 404(b) Evidence</u>. The government must produce evidence of prior similar acts under Fed. R. Crim. P. 16(a)(1) and Fed. R. Evid. 404(b) and any prior convictions which would be used to impeach as noted in Fed. R. Crim. P. 609. In addition, under Fed. R. Evid. 404(b), "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature" of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial. The defendant requests notice two weeks before trial to give the defense time to investigate and prepare for trial.

30. <u>Residual Request</u>. The defendant intends by this discovery motion to invoke his rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States.

//

//

## IV.

## MOTION FOR LEAVE TO FILE FURTHER MOTIONS

As new information surfaces – via discovery provided by government, defense investigation, or an order of this court – the defense may need to file further motions or to supplement existing motions. Accordingly, Mr. Gallegos requests leave to file further motions at a later date.

## V.

## CONCLUSION

For the reasons stated, Mr. Gallegos requests this Court grant his motions.

Respectfully submitted,

/s/ *Gregory Murphy*

Dated: June 16, 2008

GREGORY MURPHY
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Gallegos
gregory_murphy@fd.org

1 | **GREGORY T. MURPHY**
California State Bar No. 245505
2 | **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
3 | San Diego, CA 92101-5008
(619) 234-8467/Fax: (619) 687-2666
4 | E-Mail: gregory_murphy@fd.org

5 | Attorneys for Mark Anthony Gallegos

8 | UNITED STATES DISTRICT COURT

9 | SOUTHERN DISTRICT OF CALIFORNIA

10 | **(HONORABLE THOMAS J. WHELAN)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 08CR1552-W |
| Plaintiff, | ) | |
| v. | ) | **CERTIFICATE OF SERVICE** |
| MARK ANTHONY GALLEGOS, | ) | |
| Defendant. | ) | |

Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best of his information and belief, and that a copy of the foregoing document has been served this day upon:

Gayle J. Mayfield-Venieris
federal@mayfield-law.com,mayfieldlaw@gmail.com; and

David D. Leshner
david.leshner@usdoj.gov,esmeralda.diaz@usdoj.gov,efile.dkt.gc1@usdoj.gov

Respectfully submitted,

DATED:     June 16, 2008            /s/ Gregory T. Murphy
                                    **GREGORY T. MURPHY**
                                    Federal Defenders of San Diego, Inc.
                                    Attorneys for Mark Anthony Gallegos